IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01638-KLM

THE BUTMAN FAMILY INVESTMENT LIMITED PARTNERSHIP,

      Plaintiff,

v.

OWNERS INSURANCE COMPANY,

      Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on Defendant's **Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) & (6)** [#12][1] (the "Motion"). Plaintiff filed a Response [#23] in partial opposition to the Motion, and Defendant filed a Reply [#31]. The Court has reviewed the Motion, the Response, the Reply, the entire docket, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#12] is **GRANTED in part and DENIED in part**.[2]

**I. Background**[3]

_____

[1] "[#12]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). The Court uses this convention throughout this Order.

[2] This case has been referred to the undersigned for all purposes pursuant to D.C.COLO.LCivR 40.1(c) and 28 U.S.C. § 636(c), on consent of the parties. *See* [#21, #22].

[3] The Court accepts all well-pleaded allegations of the Complaint [#6] as true and construes them in the light most favorable to Plaintiff, the non-movant. *See Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991).

This matter arises from a claim made by Plaintiff under an insurance policy (the "Policy") issued by Defendant which provided coverage for Plaintiff's commercial property in Adams County, Colorado, at the relevant time underlying this lawsuit. *Compl.* [#6] ¶¶ 5-7.

On May 8, 2017, a hail storm damaged Plaintiff's property, including the roofing systems, exterior doors, HVAC, insulation, paint, soffits, fascia, gutters, steel components, stucco, exterior plaster, and interior from resultant water leakage. *Id.* ¶¶ 31-34. Monarch Construction performed the first damages assessment,[4] and on September 6, 2017, the company generated a repair estimate outlining $190,685.42 in damages. *Id.* ¶¶ 37-38.

Defendant later retained Spectrum Forensics ("Spectrum") to inspect the property, which was done on March 7, 2018. *Id.* ¶¶ 42-43. On April 1, 2018, Spectrum provided its report, in part offering conclusions about the SPF protective coating on the roofing, even though Spectrum's inspector had admitted to having no experience with SPF protective coating. *Id.* ¶¶ 44-53. Plaintiff avers that current building code in Adams County requires the roof to meet "a new insulation requirement holding an R-20 insulation," and that adding sufficient SPF insulation to meet the Adams County requirement, as suggested by Spectrum, would add so much weight to the roofing system that it would breach the code's weight threshold for roofing materials and the minimum 30 pounds per square foot for snow

---

[4] Plaintiff does not clearly state who hired Monarch Construction. Here, Plaintiff states: "[F]ollowing an inspection of the Property, on behalf of Plaintiff, Monarch Constructions generated a repair estimate . . . ." *Compl.* [#6] ¶ 38. This implies that Plaintiff hired Monarch Construction. However, the next estimate discussed in the Complaint is one by Spectrum Forensics, hired by Defendant, and this estimate is dubbed by Plaintiff as "Auto-Owners Second Repair Estimate," which seems to indicate that Monarch Construction's estimate was Defendant's first repair estimate. *Id.* ¶ 57.

load.  *Id.* ¶¶ 55-56.  Spectrum did not provide analysis regarding any other type of hail damage in its report.  *Id.* ¶ 54.

On April 5, 2018, following Spectrum's report, Defendant provided a repair estimate outlining $94,167.59 in replacement cost value damages, but this estimate failed to provided sufficient coverage for damages to the roofing system, HVAC, insulation, interior damages, and other damaged components of the property and further excluded necessary line items for labor, cleaning, overhead, and profit.  *Id.* ¶¶ 57-58.  This estimate also provided for "scarifying and installing" new SPF over the metal panel roofing system even though this methodology would not meet code requirements for insulation without overloading the weight limitation.  *Id.* ¶ 59.

On June 7, 2018, Plaintiff informed Defendant again that its repair methodology for the roofing system was unreasonable, but, without providing any reason, Defendant maintained its position and did not provide an updated repair estimate.  *Id.* ¶¶ 63-64. Because Defendant unreasonably relied on the "flawed and uncertain" Spectrum report, and because the estimate failed to meet Adams County requirements for insulation, Plaintiffs were forced to incur the expense of retaining an unspecified Colorado licensed public adjusting firm and a Colorado licensed professional engineer, Rivet Engineering Group ("Rivet"), to assist in the investigation and adjustment of the claim.  *Id.* ¶¶ 60-62, 65.

On July 11 and September 24, 2018, Rivet inspected the property.  *Id.* ¶¶ 66-67. In its subsequent report, Rivet opined that the metal panel roofing system could only withstand the weight of R-29 insulation "assuming the insulation had a similar density to SPF, fiberglass batts, or XPS rigid insulation," which would be insufficient to meet the Adams County code.  *Id.* ¶¶ 68-69.  Rivet also concluded that the roofing system was

damaged by hail impact and that the roofing system required additional insulation beyond the current level of insulation existing on the roofing system. *Id.* ¶¶ 70-71. Using Rivet's report, Plaintiff's public adjuster generated a repair estimate outlining $223,168.95 in covered damages to the property caused by the hail storm. *Id.* ¶ 72.

On January 22, 2019, Spectrum provided a rebuttal to Rivet's report which "dodge[d] the issue of the required R-value for the SPF and reconfirm[ed] its previously suggested repair methodology." *Id.* ¶ 73. Despite the fact that the SPF was not part of the original roofing construction but was installed about four years after construction of the property, Spectrum claimed that the metal panels were just "roof sheathing" in an effort to further justify the unreasonable repair methodology it had suggested for the property. *Id.* ¶ 74.

On April 1, 2019, Defendant retained Envista Forensics ("Envista") to make yet another inspection of the property. *Id.* ¶ 75. On April 15, 2019, Envista generated a repair estimate outlining $163,861.81 in replacement cost covered damages. *Id.* ¶ 76. Although Envista's estimate resulted in an additional $69,694.22 in replacement cost covered damages not previously included in Defendant's prior repair estimates, Envista failed to provide for all replacement cost covered damages and costs owed under the Policy, including for reasonable repair of the roofing systems, for the damaged HVAC units, and for the interior leaking. *Id.* ¶¶ 77-78, 80-82. Defendant's failure to pay the additional replacement cost covered damages included in Envista's estimate has resulted in the delay of $69,694.22 of benefits owed to Plaintiff under the Policy. *Id.* ¶ 79.

The Policy limits Colorado's statutory period for Plaintiff to file a lawsuit to only two years from the event, which occurred on May 8, 2017. *Id.* ¶¶ 31, 84. On April 8, 2019, Plaintiff's public adjuster asked Defendant to enter into a tolling agreement and, receiving

no response, followed up on April 19, April 24, May 1, and May 2, 2019.  *Id.* ¶ 85-89.
Finally, on May 3, 2019, nearly a month after Plaintiff's initial request and five days prior to
the statute of limitations running on Plaintiff's right to file a lawsuit, Defendant responded
that it would not enter into a tolling agreement.  *Id.* ¶ 90.  Plaintiff asserts that Defendant's
"abject failure" to respond to Plaintiff's request sooner was unreasonable and a bad faith
attempt to leave Plaintiff with little or no time to protect its rights under the Policy.  *Id.* ¶ 91.
On May 7, 2019, Plaintiff asked Defendant whether it would agree to participate in the
Policy's appraisal process, but Defendant did not respond prior to the filing of this action.
*Id.* ¶ 92.

Plaintiff asserts the following claims: (1) declaratory relief to compel appraisal; (2)
breach of contract; (3) bad faith breach of insurance contract; and (4) unreasonable delay
and denial of payment of covered benefits pursuant to Colo. Rev. Stat. §§ 10–3–115 and
10–3–1116.  *Id.* ¶¶ 116-78.  In the present Motion [#12], Defendant seeks dismissal of all
claims on the bases of mootness, ripeness, and failure to state a claim.

## II.  Standard of Review

### A.    Fed R. Civ. P. 12(b)(1)

Subject matter jurisdiction may be challenged by a party or raised sua sponte by the
court at any point in the proceeding.  *See, e.g.*, *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6,
16-19, (1951); *Harris v. Illinois–California Express, Inc.*, 687 F.2d 1361, 1366 (10th Cir.
1982); Fed. R. Civ. P. 12(h)(3).  Rule 12(b)(1) concerns whether the Court has jurisdiction
to properly hear the case before it.  Dismissal of a federal claim for lack of subject-matter
jurisdiction "is proper only when the claim is 'so insubstantial, implausible, foreclosed by
prior decisions of this Court, or otherwise completely devoid of merit as not to involve a

federal controversy.'"  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998)

(quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974)).  Because

"federal courts are courts of limited jurisdiction," the Court must have a statutory basis to

exercise its jurisdiction.  *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see* Fed.

R. Civ. P. 12(b)(1).  Statutes conferring subject-matter jurisdiction on federal courts are to

be strictly construed.  *F. & S. Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).

"The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction."

 *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

**B.**     **Fed. R. Civ. P. 12(b)(6)**

        The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the

sufficiency of the allegations within the four corners of the complaint after taking those

allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ.

P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon

which relief can be granted").   "The court's function on a Rule 12(b)(6) motion is not to

weigh potential evidence that the parties might present at trial, but to assess whether the

plaintiff's complaint alone is legally sufficient to state a claim for which relief may be

granted."  *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir.

1999) (citation omitted).  To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a

complaint must contain enough allegations of fact to state a claim for relief that is plausible

on its face."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell

Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove,

Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts,

taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support

the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (brackets in original; internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n] [ ] that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a). *Iqbal*, 556 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

### III. Analysis[5]

#### A.    Fed. R. Civ. P. 12(b)(1)

##### 1.    Mootness

Plaintiff's first claim is for declaratory relief to compel an appraisal under the Policy. *Compl.* [#6] ¶¶ 116-122. However, the parties now agree that appraisal has already been properly invoked. Defendant states:

---

[5] Because the Court's jurisdiction in this lawsuit is based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a), the Court applies federal procedural law and Colorado substantive law. *See* [#1-8]; *4 Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995); *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1539 (10th Cir. 1996).

> As the alleged invocation of the appraisal process did not occur until the day Plaintiff filed suit, Defendant did not have a meaningful opportunity to respond.  Defendant agrees that Plaintiff has invoked appraisal, which is the proper method of resolving this particular dispute.   Thus, there is no disagreement on this issue and the claim for declaratory relief is moot.

*Motion* [#12] at 5.  Plaintiff concedes that its claim "seeking declaratory relief appears to have been mooted by [Defendant's] recent representations that it has agreed to move forward with the appraisal process . . . ."  *Response* [#23] at 7. Indeed, the appraisal process appears to be ongoing.  *See Motion for Stay of Discovery* [#37] at 4.  Given the parties' agreement and given that this claim does appear to be moot, the Motion [#12] is **granted** to the extent that Plaintiff's First Claim for declaratory relief to compel appraisal is **dismissed without prejudice as moot**.  *See, e.g., Lewis v. Burger King*, 398 F. App'x 323, 325 n.3 (10th Cir. 2010) (stating that dismissal due to mootness must be without prejudice); *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216-17 (10th Cir. 2006) (recognizing established rule that "where the district court dismisses for lack of jurisdiction . . . , the dismissal must be without prejudice" because a court without jurisdiction lacks power "to make any determination of the merits of the underlying claim").

## 2. Ripeness

Defendant next argues that the Court does not have jurisdiction over the breach of contract claim or the unreasonable delay or denial claim because those claims are not yet ripe.  *Motion* [#12] at 3.

Article III of the United States Constitution limits the jurisdiction of the federal courts to actual cases or controversies.  U.S. Const. art. III, § 2, cl. 1.  "In order for a claim to be justiciable under Article III, it must be shown to be a ripe controversy."  *New Mexicans for*

*Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995). "'[R]ipeness is peculiarly a question of timing,' intended 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements,'" *id.* (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)), and from determining disputes "[before] the controversy is presented in 'clean-cut and concrete form.'" *Id.* (quoting *Renne v. Geary*, 501 U.S. 312, 317 (1991)). Inquiry into a controversy's ripeness for judicial determination should be done flexibly rather than mechanically. *Sierra Club v. Yeutter*, 911 F.2d 1405, 1416 (10th Cir. 1990).

In determining whether an issue is ripe for adjudication, courts are guided by a two-factor test which directs courts to consider both "the fitness of the issue for judicial resolution" and "the hardship to the parties of withholding judicial consideration." *Id.*; *Sierra Club*, 911 F.2d at 1415; *Abbot Labs.*, 387 U.S. at 149. With regard to the first factor—the issue's fitness for judicial resolution—the "main focus . . . is 'whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Tillery v. Raemisch*, No. 16-cv-0282-WJM-STV, 2017 WL 217816, at *3 (D. Colo. Jan. 18, 2017) (quoting *Richardson*, 64 F.3d at 1499); *S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1158 (10th Cir. 2013). Under the second factor—the potential hardship to the parties of withholding judicial resolution—the inquiry "'typically turns upon whether the challenged action creates a "direct and immediate" dilemma for the parties.'" *Richardson*, 64 F.3d at 1499 (quoting *El Dia, Inc. v. Hernandez Colon*, 963 F.2d 488, 495 (1st Cir. 1992)).

**1.      Fitness of the Controversy for Judicial Resolution**

As to the first factor, an action is fit for judicial resolution when the issues presented

are purely legal and when "the impact of the [challenged action] upon the [plaintiff] is sufficiently direct and immediate as to render the issue appropriate for judicial review." *Abbott Labs.*, 387 U.S. at 149, 152.

In the instant Motion, Defendant argues with respect to the breach of contract claim that:

> Plaintiff has undisputedly invoked the appraisal process outlined in the policy, and until that process is completed, the terms of the policy do not require Defendant to make disputed payments. It is theoretically possible for the appraisal process to resolve the dispute to Plaintiff's satisfaction; therefore, any dispute over the correct amount of payment is not yet ripe.

[#12] at 3. Similarly, Defendant argues that the statutory bad faith claim fails because "Defendant's duty to pay the amounts claimed by Plaintiff had not yet been contractually triggered," and "therefore, the statutory delay and denial claim is not ripe and the Court does not have jurisdiction to hear it." *Reply* [#31] at 7.

In short, Defendant seems to be arguing that the breach of contract claim and the unreasonable delay or denial claim are both contingent on a future event, i.e., completion of the appraisal process. *See Texas v. United States*, 523 U.S. 296, 300 (1998) (finding claims not ripe where they are premised on a "contingent future event[] that may not occur as anticipated, or indeed may not occur at all"). Plaintiff purportedly attempts to address the jurisdictional issue of ripeness, but the substance of the argument appears to actually focus on whether it has adequately stated these claims. *Response* [#23] at 7-11.

Defendant primarily relies on two District Court opinions issued by the same judicial officer to support its premise that the claims are not ripe because the appraisal process has not been completed. *Motion* [#12] at 7. First, in *Vista Pointe Townhome Association, Inc. v. Auto-Owners Insurance Company*, No. 16-cv-00973-MSK-NYW, 2017 WL 4772859, at

*2 (D. Colo. Oct. 23, 2017), the Court stated:

> The Court continues to have significant doubt that jurisdiction exists for the claims asserted in this case . . . . In this action, [the insured] has asserted a breach-of-contract claim, a bad-faith claim, an unreasonable-delay claim, and filed a motion to compel the appraisal process set forth in the Policy. Because no breach of contract existed as of the time of filing the action, and the parties are currently performing their obligations under the Policy, it appears that [the insured] lacked standing to pursue any of these claims. All of [the insured's] claims are predicated on the anticipation that [the insurer] will not actually pay the amount determined to be owed under the Policy. But there has been no determination of the amount claimed under the policy, and no concrete refusal by [the insurer] to pay such sum. Rather, the value of [the insured's] claim remains unliquidated, and the parties' pursuit of the appraisal process and request to appoint an umpire demonstrates that there are conditions precedent yet to be satisfied before [the insured's] claim is quantified and [the insurer's] duty to pay matures (much less is breached). Given this posture, it is mere speculation on [the insured's] part that [the insurer] will refuse to pay what is owed under the contract. In essence, the breach of contract claim is not yet ripe, nor are [the insured's] bad-faith and unreasonable-delay claims.

(internal footnotes omitted). The second case cited by Defendant is *Copper Oaks Master Home Owners Association v. American Family Mutual Insurance Company*, No. 15-cv-01828-MSK-MJW, 2018 WL 3536324, at *18 (D. Colo. July 23, 2018). There, the Court similarly held:

> [D]etermination of the amount of the loss was a condition precedent to [the insurer's] obligation to pay in accordance with the Policy. Because the vacatur of the appraisal award nullifies any determination as to amount that existed at the time of filing this action, [the insured] had no standing to bring its third claim, sounding in breach of contract for failure to pay. Such claim is therefore DISMISSED.

2018 WL 3536324, at *18.

With all due respect to *Vista Pointe* and *Copper Oaks*, the Court finds that the issue raised by Defendant is not jurisdictional, for the following reasons. First, the *Vista Pointe* court noted that "[c]ourts in Colorado and elsewhere have held that the parties to an

insurance contract with an appraisal process as a condition precedent to bringing suit can waive their contractual appraisal rights." 2017 WL 4772859, at *2 n.2 (citing *Laredo Landing Owners Ass'n, Inc. v. Sequoia Ins. Co.*, No. 14-cv-01454-RM-KMT, 2015 WL 3619205, at *2 (D. Colo. June 10, 2015); *Ins. Co. of N.A. v. Baker*, 268 P. 585, 586 (Colo. 1928)). A condition precedent may or may not be jurisdictional, of course. For example, a failure to exhaust administrative remedies through the Equal Employment Opportunity Commission is a condition precedent to filing suit but is not jurisdictional; rather, it is an affirmative defense under Rule 12(b)(6). *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1182-85 (10th Cir. 2018). On the other hand, failure to comply with the notice provisions of the Colorado Governmental Immunity Act is a jurisdictional condition precedent. *Wiese v. Colorado Springs, Colorado*, ___ F. Supp. 3d ___, ___, No. 17-cv-02696-PAB-NYW, 2019 WL 4751804, at *18 (D. Colo. Sept. 30, 2019).

Importantly, while *procedural* conditions precedent may be waived, jurisdictional ones may not be. *See, e.g.*, *Tennell v. Amazon.com Servs., Inc.*, No. 19-cv-02889-CMA-KLM, 2020 WL 914534, at *3 (D. Colo. Feb. 26, 2020); *see also id.* at *1 (stating that "challenges to subject matter jurisdiction cannot be waived"); *Guttman v. Silverberg*, 167 F. App'x 1, 4 (10th Cir. 2005) ("[L]ack of jurisdiction cannot be waived and jurisdiction cannot be conferred upon a federal court by consent, inaction, or stipulation" (quoting *Basso v Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974))). Thus, the observation in *Vista Pointe* that "the parties to an insurance contract with an appraisal process as a condition precedent to bringing suit can waive their contractual appraisal rights" is, in this Court's view, a strong indication that the appraisal process "condition" is not jurisdictional in nature. 2017 WL 4772859, at *2 n.2.

Second, the Court has found no case law from the Tenth Circuit Court of Appeals, the Colorado Supreme Court, or the Colorado Court of Appeals holding that the effect of the on-going status of the appraisal process is an issue of ripeness. In fact, courts appear to routinely treat this as an issue to be adjudicated under Rule 12(b)(6) rather than Rule 12(b)(1). For example, in *Bardill v. Owners Insurance Company*, No. 18-cv-03319-CMA-SKC, 2019 WL 4744789, at *6 n.3 (D. Colo. Sept. 30, 2019), the Court held that "the assertion that a party failed to meet a condition precedent to a contract is an affirmative defense that is not considered in determining whether a party has asserted an affirmative claim for breach of  contract." No. 18-cv-03319-CMA-SKC, 2019 WL 4744789, at *6 n.3 (D. Colo. Sept. 30, 2019) (citing *Christenson v. Citimortgage, Inc.*, No. 12-cv-02600-CMA-KLM, 2013 WL 5291947, at *7 (D. Colo. Sept. 18, 2013) (citing 13 Williston on Contracts § 38:5 (4th ed. 2000)). Similarly, in *Hometown Community Association, Inc. v. Philadelphia Indemnity Insurance Co.*, No. 17-cv-00777-RBJ, 2017 WL 6335656, at *4 (D. Colo. Dec. 12, 2017), (which, curiously, was also relied on by Defendant, *see Motion* [#12] at 7), the plaintiff's breach of contract claim was dismissed because, "[t]hough [the insured] may have disagreed with [the insurer's] scope of repairs or its initial actual cash value amount, such a disagreement is contemplated in the insurance policy, and the appraisal process exists to address just such disagreements." However, the breach of contract claim was dismissed there for failure to state a claim rather than on any jurisdictional ground, so it is difficult to see how that case supports Defendant's assertion that these claims should be dismissed under Fed. R. Civ. P. 12(b)(1) rather than Fed. R. Civ. P. 12(b)(6). *Hometown Cmty. Ass'n, Inc.*, 2017 WL 6335656, at *3-4 (addressing issue as whether the insured sufficiently alleged the third element of a breach

of contract claim under Colorado law, i.e., whether the insurer failed to perform its obligation under the contract). Thus, regardless of whether the issue is framed as one of failing to meet the elements of a breach of contract claim or as one of an affirmative defense, the result is the same, i.e., that the on-going nature of an appraisal is not a jurisdictional issue.

Finally, the Court notes the paradoxical nature of the analysis in *Vista Pointe*, where the non-jurisdictional issue of whether there had been a breach of contract was determined by the Court before deciding that the breach of contract claim was ripe to be adjudicated. *See* 2017 WL 4772859, at *2 ("Because no breach of contract existed as of the time of filing the action . . . , it appears that [the insured] lacked standing to pursue any of these claims."). As framed by *Hometown Community*, the issue is not whether the claim is yet ripe, but rather whether there are sufficient allegations in the complaint to support the elements of a breach of contract claim, including whether the insured has adequately alleged that the insurer failed to perform its obligation under the contract. Here, Plaintiff essentially asserts that Defendant should have performed under the Policy by paying on its insurance claim. Plaintiff's alleged injury is that it has not yet been paid. If the facts and the law later show that Defendant was not yet obligated to perform under the contract, then Plaintiff's claim will fail, but this does not mean that the Court lacks jurisdiction to determine the sufficiency of Plaintiff's allegations regarding Defendant's obligation to pay under the Policy. This reasoning also applies to Plaintiff's statutory delay-or-denial claim.

Thus, in short, the Court finds that, at this stage, where Plaintiff has alleged that the breach of contract and the unreasonable delay and/or denial have already occurred, it would not be premature for the Court to exercise its jurisdiction simply because appraisal

has not been completed. Accordingly, the Court finds that the breach of contract claim and the unreasonable delay and denial claim are both fit for judicial review.

**B. Hardship to the Parties from Withholding Review**

Having found that Plaintiff's claims are presently fit for judicial review, the Court need only briefly turn to the second factor of the ripeness analysis, which is the potential hardship to the parties that would result from withholding consideration. *Abbot Labs.*, 387 U.S. at 149. "Hardship" is constituted by adverse legal effects as well as "significant practical harm." *Ohio Forestry Ass'n*, 523 U.S. at 726-27.

Here, Plaintiff alleges that the Policy provides a two-year statute of limitations from the loss event. *Compl.* [#6] ¶ 84 ("The Policy limits Colorado's statutory time period for Plaintiff to file a lawsuit to only two-years from the event."); *see The Pinewood Townhome Assoc., Inc. v. Auto Owners Ins. Co.*, No. 15-cv-01604-CMA-NYW, 2017 WL 590294, at *2 (D. Colo. Feb. 13, 2017) (holding in an insurance-claim case that the parties could contractually shorten Colorado's statute of limitations to two years from the date the loss occurred). Thus, if the Court were to dismiss the breach of contract claim, Plaintiff may be barred from refiling, given that the loss occurred on May 8, 2017. *Compl.* [#6] ¶ 31. This means that deferring judicial review may pose a hardship to Plaintiff if it could not reassert this claim in a future lawsuit. The Court therefore finds that withholding review of Plaintiff's claims is likely to create significant hardship to Plaintiff, so the second factor in the two-part ripeness inquiry also indicates that Plaintiff's claims are ripe.

In conclusion, weighing the relevant factors, the Court finds that Plaintiff's claims are ripe. Accordingly, the Motion [#12] is **denied** to the extent Defendant seeks dismissal of

Plaintiff's breach of contract claim and unreasonable delay and denial claim on the basis of lack of jurisdiction.

## B.     Fed. R. Civ. P. 12(b)(6)

Defendant argues that Plaintiff has failed to state a claim with respect to both its statutory unreasonable delay or denial claim and its common law bad faith claim. *Motion* [#12] at 10-13; *Reply* [#31] at 6-10.   Plaintiff essentially argues that Defendant acted unreasonably because (1) Defendant relied on Spectrum's and Envista's respective outcome-oriented investigations despite the fact that they were clearly inadequate in failing to complete a full and fair inspection and/or provide for appropriate and complete repair methodologies which addressed all damages, *id.* ¶¶ 96-100; (2) Defendant ignored documentation illustrating covered damages to the property and documented building and repair requirements for all covered damages, *id.* ¶ 102; and (3) Defendant has not attempted in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim where liability has become reasonably clear, including the fact that Defendant compelled Plaintiff to initiate litigation to recover amounts due under its insurance Policy by offering substantially less than Plaintiff's amount of loss, *id.* ¶¶ 105, 115.

The requirements of a common law bad faith claim under Colorado law are heightened in comparison to those of a statutory bad faith claim. *Fisher v. State Farm Mut. Auto. Ins. Co.*, 419 P.3d 985, 990 (Colo. App. 2015); *Bucholtz v. Safeco Ins. Co. of Am.*, 773 P.2d 590, 592 (Colo. App. 1988).   Both common law and statutory bad faith claims require a showing of unreasonable conduct. *Trujillo v. State Farm Mut. Auto. Ins. Co.*, No. 18-cv-0410-WJM-NRN, 2019 WL 3996882, at *8 (D. Colo. Aug. 23, 2019) (citing *Goodson v. Am. Standard. Ins. Co. of Wisc.*, 89 P. 3d 409, 414 (Colo. 2004)).   However, a common

law insurance bad faith claim requires the insured to sufficiently allege both that the insurer acted unreasonably under the circumstances *and* that the insurer knowingly or recklessly disregarded the validity of the insured's claim, while "the only element at issue in a statutory claim is whether an insurer denied [or delayed] benefits without a reasonable basis." *Fisher*, 419 P.3d at 990 (citations omitted).

Plaintiff argues that these claims are supported by the following. *Response* [#23] at 12-15. First, under the Policy, Defendant promised to "pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." *Response* [#23] (citing *Ex. A, Policy* [#12-1]). Plaintiff asserts that Defendant unreasonably maintained the untenable position stated in the April 1, 2018 report by its engineer, who admitted to having no experience with SPF roofing coating and who misidentified the purpose of SPF roofing coating. *Response* [#23] at 12 (citing *Compl.* [#6] ¶¶ 52, 74). The contractor, public adjuster, and engineer retained by Plaintiff all explained that Defendant's roofing repair methodology was not cost effective and would not work because, in order to meet the requirements of Adams County's building code, the roofing system would exceed weight thresholds. *Response* [#23] at 12 (citing *Compl.* [#6] ¶¶ 46, 63, 69, 71). All three professionals retained by Plaintiff agreed that full roof replacement, rather than a repair of the SPF insulation, was required. *Response* [#23] at 12 (citing *Compl.* [#6] ¶¶ 46, 63, 69, 71). Plaintiff asserts that Defendant ignored proper repair methodology and local code to benefit and maintain its position concerning damages. *Response* [#23] at 12.

Second, Plaintiff provided an updated estimate outlining $223,168.95 in replacement cost covered damages. *Response* [#23] at 12 (citing *Compl.* [#6] ¶ 72). Defendant's last

estimate outlined $163,861.81 but failed to provide for all covered damages. *Response* [#23] at 12 (citing *Compl.* [#6] ¶¶ 76-82). Because Defendant was unwilling to enter a tolling agreement and Plaintiff was forced to file suit by a date certain, the differences in the two estimates and Defendant's failure to provide for all covered damages created an unreasonable breach of Defendant's duty to provide all contractually owed benefits, including the $59,307.14 difference between those estimates. *Response* [#23] at 12.

Third, Plaintiff argues that Defendant's position in the Motion to Dismiss [#12] on what constitutes a breach of its obligations willfully misinterprets the Policy requirement. *Id.* at 12-13. To trigger Defendant's right to make payment in thirty days under the Policy, Defendant must first request a Proof of Loss from its insured, according to Plaintiff. *Id.* at 13 (citing *Ex. A, Policy* [#12-1]). Because Defendant did not demand a Proof of Loss from Plaintiff, the thirty-day payment period does not apply, Plaintiff avers. *Response* [#23] at 13. Plaintiff argues that this misinterpretation of the Policy is a continuation of Defendant's bad faith conduct and shows its intention to unreasonably delay or deny full payment of contractually owed benefits under the Policy. *Response* [#23] at 13. According to Plaintiff, if the Policy is read as Defendant claims in its Motion to Dismiss, the insurance contract can never be breached without Defendant's approval, further demonstrating bad faith. *Id.* "Along with Defendant's protracted adjustment of the claim, [the Proof of Loss issue] demonstrate[s] a clear attempt to run out the clock." *Id.*

Fourth, by the latter part of January 2019, Defendant had at its disposal numerous inspections, contractor opinions, and engineering reports to provide an updated estimate. *Id.* (citing *Compl.* [#6] 38, 43-55, 66-73). However, Defendant waited until April 1, 2019 to retain Envista to complete another inspection of the property. *Response* [#23] at 13 (citing

*Compl.* [#6] ¶ 75).  On April 15, 2019, Defendant completed an updated estimate. *Response* [#23] at 13 (citing *Compl.* [#6] ¶ 76).  Defendant provided no justification that it was required to, forced to, or otherwise prevented from initiating and completing its inspection/estimate sooner given Plaintiff's two-year deadline to file suit.  *Response* [#23] at 13.  Regardless, Defendant led Plaintiff to believe it was again re-evaluating damages—which could have resulted in a resolution of the dispute.  *Id.*  Given Defendant's apparent continued adjustment of the claim, Plaintiff made five requests to Defendant to enter into a tolling agreement between April 8 and May 2, 2019.  *Id.* (citing *Compl.* [#23] ¶ 85-89).  On May 3, 2019, just four days prior to the last day Plaintiff could contractually file suit, Defendant responded that it refused to enter into a tolling agreement, leaving Plaintiff with no other alternative but to request appraisal and file suit at the same time.  *Response* [#23] at 13-14 (citing *Compl.* [#6] ¶ 90).  In hindsight, Plaintiff believes that Defendant's delayed response and refusal to enter a tolling agreement was strategy, not adjustment, perpetrated to leave Plaintiff with no other option than to request appraisal and file suit.  *Id.* at 14.  According to Plaintiff, Defendant has taken the position, without justification, that utilizing the entire two-year statutory limitation period to adjust the claim is appropriate, which, if true, means that insureds would regularly lose their right and opportunity to request appraisal or file suit.  *Id.*  Thus, according to Plaintiff, Defendant's actions demonstrate a bad faith business practice to absorb the statutory period through "adjustment" of the claim.  *Id.*

In sum, Plaintiff asserts:

The record shows that [Defendant] consistently stretched its claims adjustment process.  This created at least a disputed issue of fact; whether this delayed conduct repudiated the duties to investigate and pay, and

whether [Defendant] breached the implied covenant of good faith and fair dealing in its Policy. [Defendant's] lack of consideration for Plaintiff's claim is an attempt to run out the clock and cause [Plaintiff] to lose its right to bring suit under the Policy. Because it is plausible that [Defendant's] actions during the pre-suit adjustment process, including the failure to efficiently and effectively move the claim forward, were delay tactics undertaken in bad faith, it would not be appropriate to dismiss this claim.

*Id*. at 15.

Defendant argues that "Plaintiff's allegations show nothing more than routine disagreement over the value of a claim" and that "one cannot convert 50 good faith disagreements into a single bad faith course of conduct." *Reply* [#31] at 8. Defendant further states that "a review of the Complaint's factual allegations reveals nothing more than numerous routine and reasonable disagreements over the value of the claim." *Id*. at 8-9.

While the Court agrees that Plaintiff's allegations *may* be viewed in the manner urged by Defendant, the standard of review on a Rule 12(b)(6) motion to dismiss requires the Court to construe all well-pleaded allegations of the Complaint [#1] in the light most favorable to Plaintiff as the non-movant. *See Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991). "Typically, in cases like this, the parties employ experts to opine whether such conduct aligns with industry standards." *Ridgeview Ctr. LLC v. Canopius US Ins. Inc.*, No. 18-cv-02850-REB-MEH, 2019 WL 2137394, at *4 (D. Colo. May 16, 2019). At this early stage of the case, and construing the allegations in a light most favorable to Plaintiff, the Court finds that Plaintiff has sufficiently alleged that Defendant's conduct was unreasonable. *See Vacarro v. Am. Family Ins.*, 275 P.3d 750, 756 (Colo. App. 2012) (holding "course of conduct" may be a valid bad faith theory).

The Court further finds that the allegations are sufficient to meet the second element

of a common law bad faith claim, i.e., that Defendant knowingly or recklessly disregarded the validity of the insured's claim." *Fisher*, 419 P.3d at 990 (citations omitted). At a minimum, allegations of gross undervaluation of costs may be grounds to meet this claim. *See, e.g.*, *Ridgeview Ctr. LLC*, 2019 WL 2137394, at *5.

Accordingly, the Motion [#12] is **denied** to the extent Plaintiff seeks dismissal of the statutory and common law bad faith claims pursuant to Fed. R. Civ. P. 12(b)(6).

## IV. Conclusion

For the reasons set forth above,

IT IS HEREBY **ORDERED** that the Motion [#12] is **GRANTED in part and DENIED in part**. The Motion is **granted** to the extent that Plaintiff's Claim One for declaratory relief to compel appraisal is **DISMISSED without prejudice**. The Motion is **denied** in all other respects.

Dated:  March 25, 2020

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge